**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LISA METZGER**<br>　　　Plaintiff,<br><br>　　　v.<br><br>**COOPERSBURG & LIBERTY<br>KENWORTH, INC.**, *et al.*<br>　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:　　Civil No. 5:24-cv-06426-JMG<br>:<br>:<br>:<br>: |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                **July 1, 2025**

## I.    INTRODUCTION

Lisa Metzger ("Plaintiff") filed a three-count Second Amended Complaint ("SAC") against Defendants Coopersburg & Liberty Kenworth, Inc. ("CLK"), Donald Metzger ("Mr. Metzger"), and Nicholas Daley ("Mr. Daley") (collectively "Defendants"). Plaintiff alleges (1) harassment, sex and pregnancy discrimination, and retaliation under Title VII (Count I), (2) harassment, sex and pregnancy discrimination, and retaliation under the Pennsylvania Human Relations Act ("PHRA") (Count II), and (3) retaliation under the Family and Medical Leave Act ("FMLA") (Count III). Defendants filed a partial Motion to Dismiss on the grounds that (1) a 2016 incident included in the sexual harassment claim in Count I is time-barred and (2) Plaintiff has not established a prima facie case of oppositional retaliation in Counts I and II.[1] Plaintiff has failed to prove that the 2016 incident can be aggregated into her overall hostile work environment claim, but Plaintiff has adequately pled a prima facie case of oppositional retaliation. Accordingly,

---

[1] According to Defendants, "the analyses for the PHRA and Title VII claims are identical and the arguments in this Motion with regard to the sexual harassment and retaliation claims apply equally to Plaintiff's Title VII and PHRA claims in Count I and Count II, respectively." *See* ECF No. 19 n.4.

Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint will be granted in part and denied in part.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brings claims under Title VII, the PHRA, and the FMLA against Defendants. The Court recites the facts as Plaintiff alleges them in her Second Amended Complaint and is bound to take Plaintiff at her word – only for the purposes of adjudicating this Motion. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) ("[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991))).

Around July 2016, Plaintiff began working for CLK in the role of F&I Coordinator. ECF No. 17 at ¶ 25. CLK was founded by the company's current president, Mr. Metzger, whose son married Plaintiff in 2017. *Id*. at ¶ 26. According to Plaintiff, the sexual harassment she experienced at CLK began shortly after she started employment and persisted throughout her time there. *Id*. at ¶ 36. First, in September 2016, a colleague informed Plaintiff that a supervisor had been observed photographing up Plaintiff's skirt while she climbed into a truck. *Id*. at ¶ 37. As a result, Plaintiff became distressed and uncomfortable. *Id.* at ¶ 38. Plaintiff reported the incident to her direct manager, who reported it to other supervisors. *Id*. at ¶¶ 38-40. Plaintiff felt CLK never resolved the issue because the supervisors never addressed it with her. *Id*. at ¶ 41. Plaintiff was later told that employee would never do "such a thing" on account of his religion. *Id*. at ¶ 42.

In December 2016, CLK hired Mr. Daley as a general manager. *Id*. at ¶ 43. In 2017, Mr. Daley informed Plaintiff she would be taking over Human Resources at CLK. *Id*. at ¶ 49. In June 2019, Plaintiff left CLK because of the poor treatment she experienced. *Id*. at ¶ 65. However,

Plaintiff returned to work as Human Resources Manager at CLK in November 2020. *Id.* at ¶¶ 76-77. In October 2023, an employee approached Plaintiff in her office, informing her he planned to quit his detailing job at CLK. *Id.* at ¶¶ 141-42. Plaintiff asked if the employee would prefer a different job, potentially at the satellite location under other supervisors, but the employee refused. *Id.* at ¶ 149. The employee told Plaintiff because he could no longer work for the company because he recently learned of the affair between his wife and Mr. Daley. *Id.* at ¶¶ 147, 149. His wife subsequently began bringing lunch to Mr. Daley during the workday, causing multiple colleagues to ask the employee about the relationship between wife and Mr. Daley. *Id.* at ¶ 148. Additionally, Mr. Daley gifted the employee's wife CLK branded clothing, and thus the employee informed Plaintiff that he could no longer stand the sight of CLK's emblem, nor could he continue working for the company. *Id.* at ¶¶ 149-50. Plaintiff also alleges in her SAC that the employee informed her that Mr. Daley took his wife grocery shopping and communicated with her via a second phone. *Id.* at ¶ 165. He also informed Plaintiff that his daughter rejected a job at CLK that she had previously been promised because of her mother's affair with Mr. Daley. *Id.* at ¶ 167.

On October 26, 2023, Plaintiff emailed Mr. Daley to inform him that the employee had given notice and that October 26 would be his last day. *Id.* at ¶ 151. Plaintiff also corresponded with her usual contact at a Human Resources Helpline ("the Helpline") for advice on handling the situation. *Id.* at ¶ 154. The contact recommended speaking with Mr. Metzger immediately and having Mr. Metzger fire Mr. Daley or allow Mr. Daley to resign if the allegations were true. *Id.* at ¶ 155-56. Plaintiff initially reached out to Mr. Metzger's brother, who also worked within CLK, asking to discuss the situation. *Id.* at ¶ 157. Plaintiff then spoke to Mr. Metzger, her father-in-law, about the situation and how it created a hostile work environment for the employee. *Id.* at ¶ 158. Additionally, Plaintiff informed Mr. Metzger of the Helpline contact's suggestions. *Id.* Plaintiff

and Mr. Metzger planned for Mr. Metzger to contact CLK's counsel and for Mr. Metzger to speak with the employee. *Id*. at ¶ 160-61.

The following day, the employee provided a statement and Plaintiff created a witness statement that the employee approved and signed.[2] *Id*. at ¶¶ 163, 168. Believing she was supporting a complaint of a hostile work environment, Plaintiff forwarded the signed statement to Mr. Metzger, and he later informed Plaintiff's husband that more evidence was necessary to corroborate the truth of the statement. *Id*. at ¶¶ 169-70, 174. Through another employee, Plaintiff acquired footage of the events the employee in question had described. *Id*. at ¶ 171. After some of the footage had been provided to Mr. Metzger, he directed Plaintiff and her husband to stop investigating the situation because he was hiring a private investigator. *Id*. at ¶ 172-73.

Two weeks later, CLK's CFO instructed Plaintiff to participate in an interview about the employee's allegations and to forward all relevant documentation to the private investigator. *Id*. at ¶ 176. The investigator asked about the employee's allegations in addition to Plaintiff's job qualifications, her relationship with Mr. Daley, and her husband's relationship with Mr. Daley. *Id*. at ¶ 179. Several other employees were also interviewed about the relationship between Plaintiff's husband and Mr. Daley. *Id*. at ¶ 180. Plaintiff felt, from the outset, the underlying goal of the interviews was to find a valid reason to fire her. *Id*. at ¶ 178.

Plaintiff spent the following three weeks in and out of work because of her son's hospitalization. *Id*. at ¶ 183. Upon her return in December 2023, CLK terminated her for "mishandling the investigation." *Id*. at ¶ 184. However, CLK's official letter to Plaintiff said she was terminated because she made accusations against an employee without proper cause or

---

[2] CLK later informed Plaintiff the employee claimed not to have told Plaintiff "anything" nor provided a statement to Plaintiff. ECF No. 17 at ¶ 185.

4

investigation, she recommended firing Mr. Daley without proper cause or investigation, she divulged confidential information about the situation, and she generated needless concern among the staff which negatively impacted the workplace. *Id.* at ¶ 186.

On December 2, 2024, Plaintiff filed her Complaint against CLK for violations of Title VII and the FMLA. *See* ECF No. 1. On February 3, 2025, CLK filed a Partial Motion to Dismiss Plaintiff's claims of sexual harassment and retaliation for failure to state a claim under Title VII. *See* ECF No. 6. That Motion was subsequently rendered moot by the filing of Plaintiff's First Amended Complaint. *See* ECF No. 7; *see also* ECF No. 8 (denying ECF No. 6 as moot). On March 4, 2025, CLK again filed a Partial Motion to Dismiss Plaintiff's First Amended Complaint's claims of sexual harassment and oppositional retaliation claims relating to the 2016 incident under Title VII. *See* ECF No. 9. On April 18, 2025, Plaintiff filed a Motion with this court for leave to amend her complaint, to which Defendants did not object. *See* ECF No. 15. The Court granted that Motion to Amend on May 5, 2025, and Plaintiff's Second Amended Complaint was docketed. *See* ECF No. 17. This SAC named Mr. Daley and Mr. Metzger as Defendants. *Id.* Defendants again filed a Partial Motion to Dismiss her Second Amended Complaint on the same grounds. *See* ECF. No. 19. The Court's Partial Motion to Dismiss Plaintiff's First Amended Complaint was deemed moot. *See* ECF No. 20. Plaintiff filed a response on June 10, 2025. *See* ECF No. 21.

### III.    STANDARD OF REVIEW

Per Fed. R. Civ. P. 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## IV.    DISCUSSION AND ANALYSIS

### a.  Plaintiff's 2016 Sexual Harassment Claim (Count I)

First, Defendant argues the alleged 2016 "upskirt" photo incident in the Second Amended Complaint should be dismissed from Plaintiff's Second Amended Complaint as time-barred because it is unrelated to other, timely harassment and discrimination allegations that constitute the "unchallenged" portion of her Title VII claim. ECF No. 17.[3] Plaintiff argues this 2016 incident is not a discrete act and should be included as part of Plaintiff's hostile work environment claim under the continuing violations theory. *See* ECF No. 21. In the alternative, Plaintiff argues that even if the continuing violations theory is inapplicable and this incident is dismissed from her claim, it should be viewed as relevant background in light of the remainder of her hostile work environment claim. *Id.*

Plaintiff's Title VII claim is based, in part, on a theory of a hostile work environment. *Id.* "A hostile work environment claim is composed of a series of separate acts that collectively constitute 'one unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting 42 U.S.C. § 2000e-5(e)(1)). A hostile work environment is not said to occur on any particular time or day because it is ongoing. *Mudie v. Phila. Coll. of Osteopathic*

---

[3] Defendants do not seek to dismiss the other alleged harassment, including Mr. Daley's behavior, outside of this incident. *See* ECF No. 21.

*Med.,* No. 22-2132, 2023 WL 6210754, at *3 (3d Cir. Sep. 25, 2023). "[I]t is 'only in retrospect' that a 'plaintiff recognizes that seemingly unconnected incidents were, in fact, part and parcel of a larger discriminatory pattern.'" *Fields v. Am. Airlines, Inc.,* 696 F. Supp. 3d 66, 109 (E.D. Pa. 2023) (quoting *Tearpock-Martini v. Borough of Shickshinny,* 756 F.3d 232, 236 (3d Cir. 2014)). To sustain a hostile work environment claim, Plaintiff must prove: (1) she suffered intentional discrimination; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) that discrimination would have detrimentally affected a reasonable person of the same sex in the same position as Plaintiff; (5) *respondeat superior* exists. *Mandel v. M&Q Packaging Corp.,* 706 F.3d 157, 167 (3d Cir. 2013). Because Defendant is not contesting the entirety of Plaintiff's hostile work environment claim, the Court will address only Defendant's argument that the 2016 incident is barred under the statute of limitations.

Under Title VII, claims must be filed with the EEOC within three hundred days of the alleged discrimination occurring. 42 U.S.C. §§ 2000e-5(e)(1). PHRA claims must be filed with the Pennsylvania Human Relations Commission within one hundred and eighty days of the alleged discrimination. 43 P.S. § 959(h). A charge should be filed by the three hundredth (or, for the state claim, one hundred eightieth) day after the alleged employment practice occurred. *See Morgan*, 101 U.S. at 110. Under the doctrine known as the continuing violations theory, discriminatory acts which occurred outside of the statute of limitations may be aggregated as part of a complaint if sufficiently related to the timely conduct that forms the basis of the complaint. *Id at* 117; *see also Mandel*, 706 F.3d at 165. To be included under continuing violations theory, the time-barred conduct must be connected to at least one of the actionable behaviors or incidents that fall within the statutory period. *Fields,* 696 F. Supp. 3d 66 at 109-10. Plaintiff must demonstrate (1) "at least one act occurred within the filing period" and (2) "the harassment is more than the occurrence of

isolated or sporadic acts of intentional discrimination." *Id.* at 110. However, if a particular discriminatory action or actions are determined to be "discrete," they must be dismissed despite relatedness to the timely claims. *Morgan*, 101 U.S. at 113; *see also Johnson v. Fed. Express Corp.*, 996 F. Supp. 2d 302, 316 (M.D. Pa. 2014) ("'[T]he continuing violation doctrine applies only to a pattern of discriminatory acts that are not individually actionable; this doctrine is inapplicable when there are discrete, actionable discriminatory acts.'").

To determine if an incident pertains to a persistent pattern sustaining a hostile work environment, a court may consider the type of discrimination, meaning the subject matter, and the frequency of the discriminatory acts. *Mandel*, 706 F.3d at 166-67; *see also Smith v. RB Distrib. Inc.*, 498 F. Supp. 3d 645, 657 (E.D. Pa. 2020). "To be part of the same unlawful employment practice, component acts must involve 'similar conduct by the same individuals, suggesting a persistent, ongoing pattern.'" *Mudie*, 2023 WL 6210754, at *3 (quoting *Mandel*, 706 F.3d at 167). The court should not parse out individual events which formulate the hostile work environment claim; instead, the actions should be viewed in their entirety. *Mandel*, 706 F.3d at 165. However, a significant gap of time between the discriminatory or harassing incidents may prohibit the time-barred claim from being attached under continuing violations theory. *Bishop v. Nat'l R.R. Passenger Corp.*, 66 F. Supp. 2d 650, 660-61 (E.D. Pa. 1999) (recognizing because Plaintiff did not experience harassment while on disability leave for four years there could not be a continuing violation and thus, although "the alleged acts were all similar to one another, the lengthy interruption 'destroyed the pattern' of harassment" (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 715 (3d Cir. 1997))); *see also Lesko v. Clark Publisher Servs.*, 904 F. Supp. 415, 420 (M.D. Pa. 1995) ("The court believes that the passage of roughly two years between the first and second alleged incidents of sexual harassment indicates that they were separate and distinct.

Consequently, Plaintiff's 1987 sexual harassment claim cannot be exempted from timeliness requirements under a continuing violations theory.")

Plaintiff argues that when she complained about the 2016 sexual harassment, she was discriminated against because CLK neither investigated the incident nor disciplined the responsible party. *See* ECF No. 17 at ¶¶ 39-41. While this alleged inaction could arguably be related to her allegations of CLK's ineffective handling of her subsequent harassment and discrimination claims, the hiatus during which Plaintiff stopped working at CLK effectively separates the 2016 incident from the rest of hostile work environment claim. *See Lesko*, 904 F. Supp. at 420. The complained-of behavior in 2016 involved an isolated occurrence of harassment by an individual who is not alleged to have continued harassing Plaintiff, either before she left CLK or when she returned to the company. *See* ECF No. 17. As a result, the 2016 incident cannot be aggregated into the same persistent pattern of discrimination alleged to have commenced in 2020. See *Lesko*, 904 F. Supp. at 420. The passage of over a year makes the acts "separate" and "distinct," which bars inclusion under the continuing violations theory. *See id.* Given the lengthy gap between the allegations, the earlier one cannot be included under the continuing violations theory and the expired statute of limitations bars it from being actionable.

That said, time-barred claims may be included as background evidence to support timely claims. *Morgan*, 504 U.S. at 113 (noting that nothing in the text of the statute can be said to "bar an employee from using the prior acts as background evidence in support of a timely claim."). Whether the 2016 incident is admissible, should this case proceed to trial, as background for Plaintiff's other claims is a question for another day.

### b. Oppositional Retaliation Claim

Next, Plaintiff alleges retaliation for (1) her complaints of sexual harassment and discrimination claims and (2) "supporting and investigating a complaint of hostile work environment made by others." ECF No. 17 at ¶ 196. Defendants are only contesting the second part of this claim. *See* ECF No. 19. To succeed under a Title VII oppositional retaliation claim, Plaintiff "must show: (1) that [s]he engaged in protected conduct; (2) that [s]he was subjected to an adverse employment action subsequent to such activity; and (3) that a causal link existed between the protected activity and the adverse action." *Washco v. Fed. Express Corp.*, 402 F. Supp. 2d 547, 553 (E.D. Pa. 2005) (quoting *Barber v. CSX Distrib. Serv.*, 68 F. 3d 694, 701 (3d Cir. 1995)). Defendants argue, in regard to investigating the hostile work environment claim, Plaintiff did not engage in any protected activity which caused her termination and therefore, the claim of retaliation for investigating a colleague's claim should be dismissed from her complaint. *See* ECF No. 19.

Because Plaintiff suffered an adverse action when Defendants terminated her, the second element is met. *See Cacciola v. Work N Gear*, 23 F. Supp. 3d 518, 530 (E.D. Pa. 2014). The first and third elements, however, require a closer analysis.

### 1. Protected Activity

The central question is whether Plaintiff engaged in a protected activity. Under Title VII, there are two types of protected activity: participatory and oppositional. *Moore v. City of Phila*., 461 F.3d 331, 341 (3d. Cir. 2006). The participatory clause "protects those who participate in certain Title VII proceedings" and the oppositional clause protects "those who oppose discrimination made unlawful by Title VII." *Id*. Plaintiff argues her engagement in the investigation falls under the participatory clause. *See* ECF No. 21. However, participation in a

company's internal investigation, which is not part of a formal EEOC investigation, does not constitute a protected activity under the Title VII participatory clause. *Washco.*, 402 F. Supp. 2d at 555. Thus, because there were no official proceedings under Title VII, this is a case of oppositional retaliation.

When protesting the discriminatory behavior, Plaintiff must in good faith believe "the activity [s]he opposes is unlawful" and that belief must be "objectively reasonable." *Atkinson v. Lafayette Coll.*, 653 F. Supp. 2d 581, 595 (E.D. Pa. 2009). A Plaintiff "need not demonstrate the conduct [s]he opposed is actually a violation of the law, so long as [s]he possessed a reasonable, good faith belief that the underlying actions of the employer violated the law." *Id.* A successful underlying Title VII discrimination claim is not required for a claim of retaliation. *Collins v. Kimberly-Clark Pa, LLC*, 247 F. Supp. 3d 571, 597 (E.D. Pa. 2017). Plaintiff states because of the employee's hostile work environment claim, she reasonably believed she was supporting him and opposing behavior in violation of Title VII. *See* ECF No. 21.

Protected activity under an oppositional retaliation claim is not limited to formal complaints, as "informal" complaints of discrimination, including "making complaints to management" or writing letters may be sufficient. *Curay-Cramer v. Ursuline Acad. Of Wilmington, Del., Inc.,* 450 F.3d 130, 135 (3d Cir. 2006)*.* The oppositional behavior need not contain "explicit opposition to discrimination." *Doe v. Manor Coll.*, 479 F. Supp. 3d 151, 169 (E.D. Pa. 2020). However, both the employer and the discriminatory practice at issue must be identified either specifically or contextually. *Curay-Cramer*, 450 F.3d at 135. Notably, however, not every complaint concerning perceived unfairness or "slights" in the workplace constitutes protected activity. *Doe*, 479 F. Supp. at 170.  A general complaint of unfair treatment does not qualify as protected activity. *Curay-Cramer*, 450 F.3d at 135. Instead, each case should be

evaluated in light of the facts and the court should "look to the message being conveyed rather than the means of conveyance" to determine if the activity is protected. *Id.* at 135. The message must convey Plaintiff's explicit or implicit protest of an employer's discriminatory behavior which violates the federal statute at issue. *See Atkinson*, 653 F. Supp. 2d at 595. In this case, Plaintiff specifically complained to Mr. Metzger about how the employee's situation with Mr. Daley created a hostile work environment for the employee. ECF No. 21. The hostile work environment allegation at-issue here plausibly implied discrimination on the basis of sex.

If Plaintiff opposed discrimination towards a third party, that behavior may qualify as protected. *See Atkinson.*, 653 F. Supp. at 595 ("Retaliation claims extend to those who oppose discrimination against others") (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 180 (2005)). However, courts have held that when an employment statute contains an anti-retaliation provision, a plaintiff's protest of the discrimination of a subordinate third party employee must fall outside the scope of the plaintiff's job "in order to signal to the employer" that they are engaging in protected activity.[4] *See Atkinson*, 653 F. Supp. 2d at 597; *see also Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 192 (3d. Cir. 2001) (finding in the False Claims Act context that an employee hired to detect fraud did not engage in protected activity by investigating and reporting fraud to company as per his job description). In this case, Plaintiff must demonstrate she stepped

---

[4] "Numerous courts dealing with retaliation claims under the Fair Labor Standards Act ("FLSA"), Title VII, the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), and other statutes—all of which apply the same *prima facie* case elements as Title IX—have held that in order to engage in a statutorily protected activity the employee must 'step outside his or her role of representing the company and file an action adverse to the employer, actively assist other employees in asserting … rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected….'" *Atkinson*, 653 F. Supp. 2d at 598 (quoting *Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 102 (1st Cir. 2004)). So, even though this is a Title VII claim, the same rule applies across several types of statutory retaliation claims. *See id.* (citing cases)

outside of her role as Human Resources Manager to help the employee assert his protected rights. *See Cook v. CTC Comm'ns Corp.*, No. CIV.A. 06-CV-58-JD, 2007 WL 3284337, at *10 (D.N.H. Oct. 30, 2007) (finding a plaintiff's USERRA retaliation claim failed because she did not act outside her job as human resources manager because she did not prove she took "some action against a…policy" by merely raising a concern about employee treatment).

Plaintiff, in her SAC, did not present facts which specify her responsibilities as Head of Human Resources. While she did contact the Human Resources Helpline after approached with this issue, it is unclear, for the purposes of this Motion at least, whether investigating the hostile work environment claim was outside the scope of her role as Head of Human Resources. *See* ECF No. 17 at ¶ 154. On a fuller record, this aspect of Plaintiff's claim may very well fall if it can be shown she was acting within her role as Head of Human Resources. But, given the plaintiff-friendly standard in adjudicating Motions under 12(b)(6), the Court is willing to allow that record to be developed.

### 2.  Causal Connection

To establish a causal connection, courts often look for "a close temporal proximity between the protected activity and the adverse action." *Cacciola*, 23 F. Supp. 3d at 533. More than two months has been determined too long of a gap to find a causal connection. *Id.* Therefore, there is not a causal connection based on temporal proximity alone because Plaintiff initially informed Mr. Daley of the employee's resignation on October 26th, and CLK terminated Plaintiff on December 5. *See* ECF No. 17. at ¶¶ 151, 163, 184.

However, causation requires viewing the entirety of the evidence as a whole. *Cacciola*, 23 F. Supp. 3d at 534. Courts may look for other proof in the intervening period such as "antagonistic conduct or animus against the employee." *Id.* at 534-35. A plaintiff should provide evidence about

the "scope" and "nature" of the circumstances which could support the inference of a causal connection. *Collins*, 247 F. Supp. 3d 571 at 597. Here, Plaintiff described how Mr. Metzger asked her to forgo investigating because CLK planned to hire a private investigator, but she alleges it became "abundantly clear" CLK's investigation was designed to find reason to terminate her. ECF No. 17 at ¶ 178. Because (1) the investigator asked personal questions about Plaintiff's marriage, her job qualifications, and other matters unrelated to the investigation, and (2) Mr. Daley told staff Plaintiff "would not be around for long," Plaintiff has demonstrated the plausibility of antagonistic conduct or animus and thus a plausible connection between her investigation into the employee's hostile work environment claim and her termination. *See id.* at ¶¶ 179, 182.

A causal connection is further supported because CLK informed Plaintiff her termination was directly related to her actions regarding the investigation. *See id.* at ¶¶ 184, 186. Accordingly, Defendants' Motion, as it pertains to Plaintiff's Oppositional Retaliation claim, is denied.

## V.    CONCLUSION

For the forgoing reasons, Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 19) is **GRANTED** in part and **DENIED** in part. An appropriate order follows.

BY THE COURT:


*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

14